IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1049

Filed 17 June 2026

Wilson County, No. 23CR408151-970

STATE OF NORTH CAROLINA

v.

MYRON AQUWAN RAKIM MOORE, Defendant.

Appeal by defendant from judgments entered 11 February 2025 by Judge John M. Dunlow in Wilson County Superior Court. Heard in the Court of Appeals 20 May 2026.

*Attorney General Jeff Jackson, by Assistant Attorney General Mary L. Maloney, for the State.*

*Samulski Law PLLC, by Richard J. Samulski, Jr., for defendant-appellant.*

FLOOD, Judge.

Defendant Myron Aquwan Rakim Moore appeals his convictions for fleeing to elude arrest with a motor vehicle, reckless driving to endanger, speeding, operating a motor vehicle without a license, driving while impaired, and displaying an expired registration plate. On appeal, Defendant argues the trial court erred in overruling his objection to the introduction of impeachment evidence concerning a prior incident in which he may have appeared to flee from law enforcement. Because the evidence was admitted for a proper purpose and its admission did not rise to the level of abuse of discretion for purposes of Rule 403, we hold the trial court did not err.

## I. **Factual and Procedural Background**

This appeal concerns evidence introduced at Defendant's trial pertaining to an incident in which Defendant allegedly fled law enforcement in March of 2024 (the "2024 Incident"). While the charge forming the basis for the trial from which this appeal was taken relates to a separate incident in which Defendant allegedly fled law enforcement in September of 2023 (the "2023 Incident"), Defendant was questioned about the 2024 Incident during his trial for the 2023 Incident. Because of the limited scope of the issues on appeal, we discuss the underlying facts of the 2023 Incident only insofar as they contextualize the admission of the testimony as to the 2024 Incident.

In the 2023 Incident, Defendant was alleged to have been traveling in his vehicle at over 90 miles per hour in a 55-mile-per-hour zone. When an officer who measured Defendant's rate of speed began to follow Defendant, Defendant accelerated to over 100 miles per hour despite approaching an area where the speed limit would significantly decrease. Defendant continued at a high rate of speed until he eventually slowed and parked in front of a magistrate's office. When officers apprehended Defendant, they noticed the smell of alcohol on his breath. On a breathalyzer test issued shortly after Defendant stopped, he "blew a [0].12"—a blood alcohol concentration over the legal limit of 0.08 percent for operating a motor vehicle. *See* N.C.G.S. § 20-138.1(a)(2) (2023).

At trial, Defendant testified that he was not driving away from the officers to

elude arrest, but to "driv[e] to safety[,]" directing any ensuing interaction with law enforcement to a publicly visible area to avoid any potential mistreatment. Defendant maintained this position during cross examination, indicating when questioned by the State that he did not want to be pulled over in a secluded area:

> Q. And tell us why again you turned around to head back to the city.
>
> A. Because I been in a situation where I been beat on a back road before.
>
> Q. So this was a matter of just being on a back road was the problem?
>
> A. Back road, in town, city. I feel like now today like you have to have somebody around, body cam, something for your safety, so now all my family we got cameras in our car for those purposes.
>
> Q. Is it your testimony to the jury that if this had happened in the city with more lights and people around, you would have --
>
> A. I would have pulled over.

Immediately upon Defendant testifying he "would have pulled over" if the same situation occurred in the city, the State asked to approach, and the trial court dismissed the jury. Outside the presence of the jury, the State announced its intention to question Defendant about the 2024 Incident, indicating that "it would go to his credibility . . . ." Defendant objected on the basis of relevance and on the basis that the evidence was substantially more prejudicial than probative. The trial court overruled the objections and allowed the State to pursue the line of questioning

relating to the 2024 Incident on the condition that it not inquire about any criminal charges resulting therefrom.

The State questioned Defendant about the 2024 Incident:

> Q. Well, do you recall March 15th of 2024 an encounter you had with the Wilson Police Department?
>
> . . . .
>
> [A.] Yes, sir.
>
> Q. Tell the jury what happened on that day.
>
> . . . .
>
> [A.] I was located on Elvie Street. My brakes was giving out. A cop came down the street. He was coming down the street. His lights was on. I almost ran into Elvie Street building. I made it around Elvie Street building. I hit a tree. When I tried to get out from hitting the tree, the car moved. When the car moved he kept going. I got out on Lincoln Street and I ran through the yard asking somebody to come out, help, help, the police is out here, help, help. The neighbor came out. She told me to stand out. I stood in the middle of the street.
>
> Q. And that was an encounter here in the city limits; is that right?
>
>  A. Yes, sir.
>
> Q. With the Wilson Police Department?
>
> A. Yes, sir, and I was by myself in the car.
>
> Q. That wasn't out on a back road in the middle of the night with the sheriff's department.
>
> A. Yes, sir. I don't know why he pulled me. Like I said, my

brakes giving out. I was going down Elvie Street and once I got to right in front of the Center, I tried to pull the E[mergency] brake. It didn't work. I swerved right around the building. When I came around the building, I hit the tree. Once I hit the tree, the car tried to take off. Once it did I slammed it in park, I got out and yelled for help and I never ran.

No charges relating to the 2024 Incident were discussed before the jury.

The jury found Defendant guilty on all charges. Defendant gave notice of appeal in open court.

## II. <u>Jurisdiction</u>

This Court has jurisdiction to hear Defendant's appeal from a final judgment pursuant to N.C.G.S. § 7A-27(b)(1) (2023).

## III. <u>Analysis</u>

Defendant argues on appeal that the line of questioning concerning the 2024 Incident was improper under both Rule 404(b) and Rule 403 of our Rules of Evidence.

> [W]hen analyzing rulings applying Rules 404(b) and 403, we conduct distinct inquiries with different standards of review. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.

> We then review the trial court's Rule 403 determination for abuse of discretion. A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision.

*State v. Jones*, 288 N.C. App. 175, 179–80 (2023) (internal citations and quotation

marks omitted). "When the admission of the same evidence is challenged based on both Rules 404(b) and 403, we review the evidence on 404(b) grounds first before turning to Rule 403." *Id*. at 179.

## A. Rule 404(b)

Under Rule 404(b),

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (2023). "Generally, Rule 404 acts as a gatekeeper against 'character evidence': evidence of a defendant's character—as illustrated through either direct testimony or evidence of prior bad acts—admitted 'for the purpose of proving that he acted in conformity therewith on a particular occasion.'" *State v. Pabon*, 380 N.C. 241, 258 (2022) (citing N.C.G.S. § 8C-1, Rule 404(a)).

> This important protective role notwithstanding, this Court has repeatedly held that Rule 404(b) states a clear general rule of *inclusion*. That is, relevant evidence of past crimes, wrongs, or acts by a defendant are generally admissible for any one or more of the purposes enumerated in Rule 404(b)'s non-exhaustive list, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*Id*. (citation modified). Moreover, our Supreme Court has stated that "a witness may be impeached on cross-examination by, among other things, evidence of prior

convictions, opinion testimony as to reputation, and evidence of specific instances of conduct if probative of truthfulness or untruthfulness." *State v. Call*, 349 N.C. 382, 411 (1998) (citations omitted).

Here, Defendant's testimony relating to the 2024 Incident was elicited in response to his statements concerning whether he would have stopped his vehicle if he were in a city. While it may be the case that most of Defendant's testimony more squarely concerned the desire not to be pulled over without witnesses than the desire not to be pulled over outside a city *per se*, Defendant directly stated during cross examination that he "would have pulled over" if officers had approached him "in the city with more lights and people around[.]" Although this could have been interpreted as a statement that Defendant would have pulled over only in a city *in which* other people were present, it could also have been plausibly interpreted as a statement that Defendant would have pulled over in a city because of the general expectation that population density would be higher in an urban locale. And, under the latter interpretation, evidence of a separate incident in which Defendant displayed behaviors that could have been interpreted as evading law enforcement, despite being in a city, was relevant to impeach Defendant's statements bearing on his intent. *See id.* ("[A] witness may be impeached on cross-examination by, among other things, evidence of prior convictions, opinion testimony as to reputation, and evidence of specific instances of conduct if probative of truthfulness or untruthfulness."). Accordingly, the trial court did not err under Rule 404(b).

**B. Rule 403**

Under Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (2023). As stated previously, "[w]e [] review the trial court's Rule 403 determination for abuse of discretion." *Jones*, 288 N.C. App. at 179.

As mentioned in connection with Rule 404(b), from the perspective of an appellate court reviewing this case on a cold record, the line of questioning concerning the 2024 Incident appears to have been of limited probative value, as its tendency to impeach Defendant was contingent on only one of multiple possible interpretations of his remark that he "would have pulled over" if officers had approached him "in the city with more lights and people around[.]" Similarly, its potential to prejudice Defendant by painting the image in the jury's mind that he was acting in conformity with a tendency to flee from police appears to have been high.

Nonetheless, "[a] trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 179–80. Here, there are potential factors that may have animated the trial court's Rule 403 determination that prevent us from holding the trial court abused its discretion despite the limited probative value and high potential for prejudice. The trial court may, for example, have had greater insight on how the

intonation surrounding the phrase "city with more lights and people around" reflected on its meaning than our review permits. The trial court may have also reasonably determined that the jury being exposed to the 2024 Incident through Defendant's own perspective created a relatively minimal risk of unfair prejudice. Finally, the trial court may have determined that, even if the risk of unfair prejudice existed relative to the probative value of the testimony, the risk did not *substantially* outweigh the value. *See* N.C.G.S. § 8C-1, Rule 403 (2023). Thus, we cannot say the trial court abused its discretion.

## IV. <u>Conclusion</u>

The trial court did not err in its determination that the State's line of questioning was permissible for impeachment purposes under Rule 404(b), and it did not abuse its discretion in declining to exclude the same under Rule 403. Therefore, the trial court did not err by admitting impeachment evidence concerning a prior incident in which Defendant appeared to flee from law enforcement.

NO ERROR.

Judges COLLINS and WOOD concur.